James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANLEY FISHMAN, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **AND DEMAND FOR JURY TRIAL** |
| GENERAL ELECTRIC COMPANY, | |
| Defendant. | |

Plaintiff Stanley Fishman, individually and on behalf of all others similarly situated, alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this class action individually and on behalf of the Classes defined below (the "Classes" or collectively the "Class") against General Electric Company ("GE") to obtain relief, including, among other things, damages and injunctive relief.

2.      This class action is brought to remedy violations of law in connection with GE's design, manufacture, marketing, advertising, selling, warranting, and servicing of its front-

loading washer machines (the "Washing Machines"). These Washing Machines have serious design defects (collectively, "Design Defects") that cause them to:

a. accumulate mold and mildew and/or residue or similar growth within the Washing Machines;

b. produce a moldy, mildewy or similar odor that permeates the Washing Machine and clothes and other items washed in the Washing Machine;

c. fail to clean the Washing Machines and remove moisture, residue, growth, and/or bacteria or like substances that lead to the formation of mold, mildew, and/or like substances and/or associated foul odors;

d. be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold;

e. require regular and repeated cleaning and maintenance expenses that were never disclosed prior to purchase.

The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.      The automatic clothes washer market is comprised of both vertical axis (*i.e.*, top-loading) and horizontal axis (*i.e.*, front-loading) washing machines. GE offers both top-loading and front-loading washers. Historically, consumers purchased vertical axis washing machines, which as part of their operation clean and rid themselves of the byproducts of washing clothes. Although consumers expect, based upon decades of experience, that GE's Washing Machines will also effectively clean and rid themselves of these washing byproducts, the machines do not.

4.      The Washing Machines do not effectively clean and rid themselves of the byproducts of washing clothes  due to the Design Defects, which include, among other things, the failure of the Washing Machines to:

a.  Properly rinse and drain the internal components of the Washing Machine;

b.  Sufficiently eliminate the byproducts of washing clothes;

c.  Utilize materials made with sufficient or appropriate anti-microbial additives to prevent, impede, or reduce the growth of mold, mildew, or biofilm (*i.e.*, the filmy substance that develops within the Washing Machines).

5.     As a result of these failures, the Washing Machines do not satisfy the purpose for which they were purchased (*i.e.*, to clean clothes, towels, bedding, and other washable items and to make those items smell fresh and clean).

6.     GE fails to disclose the Design Defects and Mold Problems, and falsely advertises and misrepresents or omits or fails to disclose the characteristics, benefits, quality, grade, standard, and uses of its Washing Machines by representing them as "washers" since the machines fail their most basic and fundamental purpose: making items washed within them clean.  Items washed in the Washing Machines smell foul due to the Mold Problems.

7.     GE also fails to disclose the extraordinary maintenance and associated expenses that its Washing Machines require to combat the accumulation of mold, mildew, and biofilm. The extraordinary maintenance includes, but is not limited to: keeping the door open between washes, which presents a safety risk; running frequent and lengthy hot-water cleaning cycles; running monthly "BasketClean" cycles with bleach; the need to buy and use special washing machine cleaners; and the need to wipe the interior of the Washing Machines, the door glass, and the folds of the rubber door gasket dry after use.  This information is material because a reasonable consumer would want to know how much maintenance is required for the Washing Machines before purchasing one.

8.     As a result of GE's concealment and failure to disclose the Design Defects, Mold Problems, and the extraordinary maintenance required, the Washing Machines are worth less than the price paid by Plaintiff and the Class and cost more to own and operate than GE represented.

9.     Plaintiff asserts claims for violation of the New Jersey Consumer Fraud Act, breach of express warranty, breach of implied warranty, and unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action involving more than 100 class members in which Plaintiff and other Class members and GE are citizens of different states.

11.     Venue is proper under 28 U.S.C. § 1391 because GE does substantial business in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  At all pertinent times, GE was and is in the businesss of marketing, advertising, distributing, and selling products, including the Washing Machines, throughout New Jersey and nationwide.  The Washing Machines that form the basis of this Complaint were purchased from GE and/or from GE's authorized dealers and placed in the stream of commerce by GE.

## PARTIES

12.     Plaintiff Stanley Fishman is a citizen of New Jersey, and resides in West Orange, New Jersey.  On or about November 2006, Plaintiff purchased a GE Washing Machine, which was installed in his home.  Within approximately six months of delivery, Plaintiff began to

experience mold, mildew, and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Washing Machine.

13.     Defendant GE is a New York corporation with its principle place of business at 3135 Easton Turnpike, Fairfield, Connecticut.

14.     GE manufactures and sells thousands of Washing Machines each year, a substantial portion of which are sold or offered for sale in New Jersey.  GE has sold, either directly or indirectly, thousands of its defective Washing Machines nationwide and in the State of New Jersey.

## FACTUAL BACKGROUND

15.     GE holds itself out to the public as a manufacturer of safe, technologically advanced, and easy-to-use home appliances, including Washing Machines.  GE is the largest company in the world.  The company proudly boasts of its innovation and advanced technology, its prominence as a catalyst for change, and the benefits that it provides customers and society.  GE's breadth of operations includes more than 20 industries and the company employs more than 40,000 engineers and scientists.  Given its size and prominence, consumers trust that GE products will meet or exceed GE's representations.

16.     GE, as one part of its business, manufactures, produces, distributes, and sells Washing Machines, which it makes available throughout the United States.

17.     GE sells Washing Machines both directly and through its network of authorized dealers including leading retailers and on-line merchants.

18.     GE provided Plaintiff and each purchaser of a Washing Machine with an express one-year factory warranty.

5

19.     In conjunction with each sale, GE marketed, advertised, and warranted that the Washing Machines were of merchantable quality and fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

20.     GE also made express representations about the quality of its Washing Machines.

21.     In addition to making express representations of the quality of its Washing Machines, GE also touted its Washing Machines as ENERGY STAR washers.

22.     To qualify for the ENERGY STAR label, a manufacturer must comply with current ENERGY STAR Eligibility Criteria, which define the performance criteria that must be met for use of the ENERGY STAR certification mark on clothes washers and specifying the testing criteria for clothes washers.

23.     Every Washing Machine has the ENERGY STAR logo indicating that the machine is ENERGY STAR compliant.  The ENERGY STAR logo appears prominently on the front of the machines to ensure that customers see the logo.

24.     Members of the Class purchased the Washing Machines, in part, because the machines were ENERGY STAR compliant and would lead to water and energy savings.  In reality, at the recommendation of GE, Class members have to regularly run empty cycles of hot water and/or bleach and/or other products to combat the Mold Problems, contrary to the representation that the machines would lead to water and energy savings.

25.     GE had exclusive knowledge that the Washing Machines have a Design Defect and that the Design Defect causes Mold Problems.  These facts were not known to Plaintiff and the other members of the proposed Classes.  GE's exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which GE failed to perform.

26.     GE represented that the Washing Machines were ENERGY STAR compliant, while concealing from customers the need to run extra cycles of hot water and/or bleach and/or other products to combat the Mold Problems.  GE's representations concerning the efficiency of the Washing Machines gave rise to a duty to disclose the need to run extra cycles.  Upon information and belief, GE has neither considered nor taken into account the extra loads run through the Washing Machines in an attempt to clean the machines.

27.     Further, as the Mold Problems became undeniable, GE began selling or recommending that consumers purchase Tide Washing Machine cleaner to ameliorate the Mold Problems.  Tide Washing Machine cleaner is one of several products designed, manufactured, and marketed to address Mold Problems in the Washing Machines.

28.     GE provides care instructions with its Owner's Manual & Installation Instructions.  The manual does not make any disclosure about the Mold Problems when used as instructed.  GE fails to inform or otherwise disclose to consumers that, even when operated as instructed by GE, Mold Problems will occur in the Washing Machines and that the Mold Problems will result regardless of washer maintenance due to the Design Defects.

29.     Plaintiff purchased a Washing Machine for household purposes, and at all pertinent times used the machine for its intended purpose, used the recommended high-efficiency ("HE") detergent, and have nonetheless experienced Mold Problems.  Plaintiff contacted GE concerning the Mold Problems and unsuccessfully tried GE's various recommendations to fix the problem.

30.     GE falsely represented that Plaintiff and members of the Class would "spend less time on family laundry and more time doing family activities" due to the extraordinary maintenance required of its Washing Machines.

31.     After all of the extraordinary maintenance failed, GE suggested that Plaintiff leave the washer door open between uses to ameliorate the Mold Problems.  Leaving the door open, however, changes the appearance of the Washing Machines and poses obvious safety risks to children and pets; indeed, a young child drowned in a Kenmore front loading washer, which prompted the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders.  Despite following GE's instruction to leave the washer door open between uses, Plaintiff still experienced Mold Problems with his Washing Machine.

32.     Plaintiff and other Class members experienced and continue to experience Mold Problems even though they have followed the instructions provided by GE including those set forth in GE's manual.

33.     GE intended for customers to believe its statements and representations about its Washing Machines and to trust that its Washing Machines were and are of first-rate quality.  GE concealed material facts regarding the Washing Machines, including the Design Defects, which cause the Washing Machines to experience the Mold Problems, even though consumers used the Washing Machines as instructed by GE.

34.     The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machines – as instructed by GE – resulted in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth, and moldy odors.  These defects include, among other things,

> a. the failure of the Washing Machines to properly drain water and to avoid lingering moisture;

b.  the failure of the Washing Machines to sufficiently rinse away soils and residues left after a washing cycle to prevent the accumulation of residues and similar items that contribute to the formation of mold and mildew and moldy odors;

c.  the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors and like substances when used as instructed and recommended by GE; and

d.  the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the machines for the intended purpose.

35.  Upon information and belief, defects in the drum also play a role in causing Mold Problems. Due to the defects in the drum and tubs, the machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths. As a result, the defects in the drums and tubs do not permit the Machines to clean themselves after each load. Defects in the door seal also play a role in the accumulation of mold and mildew and moldy odors. Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

36.  GE was aware, or should have known, before marketing and selling the Washing Machines, that they were inherently defective because even when operated as instructed, the machines were substantially likely to experience Mold Problems. GE nonetheless failed to warn or omitted from telling its customers of the Design Defects inherent in the Washing Machines or the Mold Problems that would result from the Design Defects.

37.  As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiff and other Class members overpaid for the Washing Machines. For

the reasons detailed herein, GE knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those machines.  If Plaintiff and other Class members had known about the Design Defects affecting the Washing Machines, they would not have paid the significant sums – often more than $1,000 per machine – that they paid for the Machines.

38.     As a result of the mold and/or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels, and other items that have been ruined by the Design Defects in the Washing Machines.

39.     GE has profited, either directly or indirectly, by concealing the true nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which has enabled it to

a.   sell the Washing Machines at premium prices;

b.   profit on repair services and parts purportedly used to fix the Mold Problems; and

c.   sell Tide Washing Machine-related products, which it misrepresented as capable of addressing and resolving the Mold Problems arising from the Design Defects.

In fact, GE has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

40.     As a result of GE's false and misleading statements and concealment, and GE's other misconduct described in this Complaint, Plaintiff and the Class bought tens of thousands of Washing Machines and have suffered – and continue to suffer – injury as a result of the defective nature of these Washing Machines and as a result of GE's misconduct.

41.     Far from being an innocuous or isolated defect of problem, in addition to Plaintiff, upon information and belief, thousands of other Washing Machine purchasers have complained

directly and indirectly to GE and its authorized dealers and service personnel and on internet websites about the Design Defects and Mold Problems with the Machines.

42.     As a result of the avalanche of consumer complaints regarding the defects that GE would not and/or could not remedy, several companies and entrepreneurs created and marketed products designed to treat, eliminate, and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines.   These products include, among others, SmellyWasher, NuFreshNow, Affresh, Clorox Washing Machine Cleaner, and Tide Washing Machine Cleaner. Due to the widespread and intractable nature of the Mold Problems, consumers have purchased tens of thousands of units of these products.

43.     Reflecting its knowledge that the Design Defects resulted in serious Mold Problems in the Washing Machines, GE sells Tide Washing Machine Cleaner on its website, as shown in the following picture.   Despite the representations on GE's website and from other media, Proctor & Gamble's Tide Washing Machine Cleaner fails to prevent and/or fix the Mold Problems experienced by Plaintiffs and other Class members.





44.     Upon information and belief, GE developed a new line of high-efficiency top-loading washers known as the GE Profile Harmony™ Topload Washer due, in part, to the Design Defects and Mold Problems.

45.     Despite having repeated notice of the above-described Design Defects and Mold Problems in the Washing Machines and despite the reasonable expectations of consumers created

by GE's marketing of its Washing Machines, GE has engaged in the following routine, albeit wrongful course of conduct, where GE:

a.  designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

b.  failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

c.  continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

d.  continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known that the Washing Machines were not dependable and would not withstand normal operation;

e.  failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

f.  failed to disclose the nature of the Design Defects to consumers;

g.  failed to disclose the many complaints it received from consumers or the high incidence of attempted, but futile, repairs of the Washing Machines;

h.  failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

i.  failed to disclose to consumers that GE was not committed to making effective repairs under its warranties to address Mold Problems;

j. failed to take action to correct its omissions or false or misleading express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

k. failed to disclose that despite following the recommended procedures within the GE Owner's Manual & Installation Instructions consumers would still experience Mold Problems.

46. By engaging in the foregoing course of conduct, GE has caused consumers – including Plaintiff and the Class – to be aggrieved and suffer ascertainable losses in that, among other things, GE's course of conduct systematically:

a. caused Plaintiff and the Class members to pay premium prices for a defective product;

b. reduced the value of the Washing Machines purchased by Plaintiff and the Class; and

c. caused reasonable consumers like Plaintiff and other Class members to spend time and money for attempted repairs and other purported remedies, such as Washing Machine cleaners, of the defects in their Washing Machines that they would not have spent, but for GE's wrongful conduct.

47. To this day, GE continues to conceal material information from users, consumers, and the public that

a. the Washing Machines are inherently defective; and

b. the Washing Machines are not of merchantable quality.

48. Any limitations on remedies contained in GE's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here. When

GE is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent that there is any notice requirement imposed by law, notice is not required because GE has (and had) actual knowledge of the Mold Problems and notice to it would be futile (in that GE failed to provide an effective remedy).

## PLAINTIFF STANLEY FISHMAN'S EXPERIENCE WITH HIS WASHING MACHINE

49.     Plaintiff purchased a Washing Machine for household purposes on or about November 2006.  He paid approximately $1,000 for the Washing Machine and at all times used the Washing Machine as instructed by GE's manual or otherwise directed by GE. Approximately six months after purchasing his Washing Machine, Plaintiff noticed a foul, mold, or mildew odor emanating from the Washing Machine.  Plaintiff attempted a "BasketClean" cycle with bleach, but it failed to correct the Mold Problems.

50.     Plaintiff contacted GE so that GE could correct the Mold Problems or instruct Plaintiff so that he may correct the problems.

51.     Surprisingly, GE recommended to Plaintiff that he leave his Washing Machine door open between washes to reduce the incidence and affects of the Mold Problem.  Not only did this recommendation not solve or prevent the problem, it creates a risk of injury to children and pets and contradicts the instructions for all Washing Machines sold by GE.  Specifically, GE warns consumers that they should "not leave the washer door open.  An open door could entice children to hang on the door or crawl inside the washer."  GE Owner's Manual & Installation Instructions at page 2.  Indeed, at least one child, a four-year old girl, has lost her life by climbing into a front load washer that her younger brother turned on.  GE has knowledge of the

danger of this recommendation and also realizes that leaving the door open neither corrects the Design Defects nor solves the Mold Problems.

52.     Plaintiff's Washing Machine continues to suffer from Mold Problems.

53.     GE refused to correct the Mold Problems and instead, provided Plaintiff a check for $75.00.

## FRAUDULENT CONCEALMENT

54.     The statute of limitations has been tolled by GE's knowing and active concealment of the fact that the Washing Machines cause Mold Problems.  GE kept Plaintiff ignorant of vital information essential to the pursuit of his claim, without any fault or lack of diligence on the part of Plaintiff.  Plaintiff could not have reasonably discovered the fact that his Washing Machine would experience Mold Problems due to the Design Defects.

55.     GE was and is under a continuous duty to disclose to Plaintiff the true character, quality, and nature of the Washing Machines.  At all relevant times, and continuing to this day, GE knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines.  Plaintiff reasonably relied upon GE's affirmative misrepresentations and knowing, affirmative, and/or active concealment.  Based on the foregoing, GE is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

**A.      Definition of the Class**

56.     Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57.     The Classes, of which Plaintiff is a member, that Plaintiff seeks to represent are defined as follows:

16

**Class A**:

All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in the United States.

**Class B (New Jersey Sub-Class)**:

All persons who own a Washing Machine for personal, family, or household purposes, and not for resale, in New Jersey.

Excluded from the Classes are GE, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judges assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

**B.      Numerosity**

58.     The members of the Classes are so numerous that joinder of all members would be impracticable. GE has sold thousands of Washing Machines throughout the nation. While the precise numbers of members are unknown to Plaintiffs, that information can be ascertained through discovery.

**C.      Commonality**

59.     There are common questions of law and fact that predominate over any questions affecting only individual members of each Class. Those common legal and factual questions, include, but are not limited to the following:

a.  Whether GE Washing Machines contain a common design defect that results in mold or mildew from normal use;

b. Whether GE knew or should have known that the Washing Machines are not dependable and/or not suitable for use as home washing machines;

c. Whether GE concealed from and/or failed to disclose to Plaintiff and putative Class material facts;

d. Whether GE engaged in unfair or deceptive acts and/or practices when it failed or omitted to disclose the unreliability of, and/or design defect inherent in, GE Washing Machines;

e. Whether GE's actions violated the New Jersey Consumer Fraud Act;

f. Whether GE is/was unjustly enriched; and

g. Whether Plaintiff and the Class have been damaged, and if so, what is the proper measure of such damages?

**D.    Typicality**

60.    Plaintiff has the same interests in this matter as all other members of the Class. Plaintiff and all Class members have been injured by the same wrongful practices of GE.

61.    Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of all Class members and are based on the same legal theories.

**E.    Adequacy**

62.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions.   Neither Plaintiff nor his counsel have any interests contrary to or conflicting with the Classes.

**F.    The Prerequisites of Rule 23(b)(2) are Satisfied**

63.    The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Rule 23(b)(2) exist as Defendant has acted or refused to act on grounds generally

applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

64.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.  Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

65.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seek, *inter alia*, equitable remedies with respect to the Class as a whole.

66.     Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**G.     The Prerequisites of Rule 23(b)(3) are Satisfied**

67.     This case satisfies the prerequisites of Rule 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

68.     Plaintiff does not anticipate any difficulty in the management of this litigation.

69.     GE has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

70.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## COUNT I

### (Violation of New Jersey Consumer Fraud Act)

71.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

72.     At all times relevant hereto there was in full force and effect the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1 *et seq.*, which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

73.     N.J.S.A. 56:8-2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact…whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

74.     At all relevant times, Plaintiff, Class members and GE were "persons" within the meaning of N.J.S.A. 56:8-1.

75.     The Washing Machines sold by GE are merchandise within the meaning of the NJCFA, and Plaintiff and Class members are consumers within the meaning of the NJCFA and entitled to the statutory remedies made available in the NJCFA.

76.     GE has violated the NJCFA through the sale of its Washing Machines, *inter alia*, by selling said machines with the Design Defects that cause the Mold Problems and failing to

disclose and/or concealing the Design Defects and Mold Problems from Plaintiff and Class members.

77.     GE intended that Plaintiff and the Class would, in the absence of disclosure and due to its misrepresentations and omissions, purchase Washing Machines while unaware of the Design Defects and Mold Problems described above.  This conduct constitutes consumer fraud within the meaning of the NJCFA.

78.     GE's conduct constitutes unlawful, unfair and deceptive business practices within the meaning of the NJCFA.

79.     Defendant's conduct has proximately caused damage to Plaintiff and Class members to suffer an ascertainable loss in an amount to be proven at trial.

<u>**COUNT II**</u>

**(Breach of Express Warranty)**

80.     Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

81.     GE made affirmations of fact and promises to Plaintiff and members of the Classes that related to the Washing Machines as more fully described herein.

82.     GE's affirmations of fact and promises became part of the basis of the bargain between the parties.

83.     These affirmations of fact and promises created an express warranty that the Washing Machines would conform to GE's affirmations and promises.

84.     GE uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects

and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

85.     GE is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiff and members of the Class.

86.     GE has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition that does not meet the warranty and obligations undertaken by GE and by failing to repair or replace the defects and/or defective parts.

87.     As set forth above, GE's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Classes cannot and should not be limited to the remedies set forth in GE's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

88.     GE has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and GE's knowledge of the defects in the Washing Machines.  GE has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

89.     Plaintiff and members of the Classes have given GE a reasonable opportunity to cure its failures with respect to its warranty, and GE has failed to do so.

90.     GE has failed to provide Plaintiff and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that GE expressly warranted when it sold the Washing Machines to Plaintiff and members of the Classes.

91.     As a result of GE's breach of express warranty, Plaintiff and members of the Classes have suffered damages in an amount to be determined at trial.

**COUNT III**

**(Breach of Implied Warranty of Merchantability)**

92.    Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

93.    GE is a merchant in the sale of the Washing Machines to Plaintiff and the members of the Classes and the Washing Machines are goods under applicable law.

94.    Plaintiff and members of the Classes are in privity with GE in that they purchased their Washing Machines directly from GE or from an actual or apparent agent of GE such as its authorized dealers.

95.    Plaintiff and members of the Classes are also in privity with GE by virtue of the contractual relationship stemming from GE's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable by Plaintiff and the members of the Classes as against GE regardless of where, or from whom, the Washing Machines were acquired.

96.    GE, as the manufacturer and seller of the Washing Machines, was obligated to make certain that the Washing Machines were reasonably fit for the purposes for which such products are used, and that the Washing Machines are acceptable in trade for the product description.

97.    Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiff and the Class were not merchantable.

98.    As documented in its own business records and elsewhere, Defendant was aware, or should have known, that that the Washing Machines were not merchantable within a reasonable time after the latent defect manifested itself to Plaintiff and the Class.

99.     As a result of the Design Defects, Mold Problems and overall non-merchantability of the Washing Machines described herein, Plaintiff and other members of the Class have sustained damages in an amount to be determined at trial.

## COUNT IV

### (Unjust Enrichment)

100.    Plaintiff repeats the allegations contained in the prior paragraphs, as if fully set forth herein.

101.    This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that the warranties do not govern all of Plaintiff's and Class members' claims or there is any determination that Plaintiff does not have standing to assert any contractual claims against GE because of any alleged absence of contractual privity or otherwise.

102.    Defendant received and retained a benefit conferred by Plaintiff and Class members at their expense through the purchase of GE Washing Machines.

103.    GE has benefitted unjustly at Plaintiff's and Class members' expense.

104.    It would be inequitable and unjust for GE to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

105.    Plaintiffs and Class members have no adequate remedy at law because of GE's conduct.

106.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

107.    Plaintiff and the members of the Classes seek restitution from GE and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by GE

from its wrongful conduct and establishment of a constructive trust from which Plaintiff and members of the Classes may seek restitution.

WHEREFORE, Plaintiff, individually and on behalf of the Classes described herein, pray for judgment against GE as follows:

A.     For an Order certifying the Classes under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), appointing Plaintiff as Class representative, and appointing the lawyers and law firms representing Plaintiff as Class Counsel.;

B.     Entering judgment in favor of Plaintiff and the members of the Class and against Defendant;

C.     For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Classes;

D.     For both pre-judgment and post-judgment interest on any amounts awarded;

E.     For appropriate injunctive relief;

F.     For payment of attorneys' fees and costs; and

H.     For such other and further relief as the Court deems proper.

> CARELLA, BYRNE, CECCHI,
>  OLSTEIN, BRODY & AGNELLO, P.C.
> Attorneys for Plaintiffs
>
> By:     /s/ James E. Cecchi
>         JAMES E. CECCHI

Dated:  January 31, 2012

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury as to all claims so triable.

CARELLA, BYRNE, CECCHI,
 OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiffs

By:   /s/ James E. Cecchi
        JAMES E. CECCHI

Dated:  January 31, 2012