UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STANLEY FISHMAN, SUZANNE BOWSWER, and VICKI PLUNKETT,** *individually and on behalf of all others similarly situated*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**GENERAL ELECTRIC COMPANY,**<br><br>**Defendant.** | Civ. No. 2:12-cv-00585 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Stanley Fishman, Suzanne Bowser,[1] and Vicki Plunkett filed this putative class action against Defendant General Electric Company ("GE"). This matter comes before the Court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** in part, and **DENIED** in part.

I.   BACKGROUND

GE manufactures, produces, distributes, and sells washing machines throughout the United States. Am. Compl. ¶ 20. Sales occur both directly to the consumer and through GE's network of authorized dealers, which includes leading retailers and online merchants. *Id.* ¶ 21. The Amended Complaint alleges that GE's "front-loading washer machines" have design defects that cause them to: (1) accumulate mold and mildew, (2) produce a moldy or mildew odor that permeates the washing machines and the clothes and other items washing in the machines; and that (3) fail to remove the moisture, residue, and bacteria that lead to the formation of mold, mildew, and foul odors (collectively, the "Mold Problems"). *Id.* ¶ 2. The Amended Complaint alleges that defects in the drum, the door, and the door seal play a role in the accumulation of mold and mildew. *Id.* ¶ 39.

---

[1] Plaintiff Bowser's name is improperly listed in the caption as "Suzanne Bowswer."

The Amended Complaint alleges that GE made numerous misrepresentations to conceal the design defects in its front-loading washing machines. Am. Compl. ¶ 37. Specifically, Plaintiffs allege that GE "made express representations" about the quality of its washing machines. *Id.* ¶ 24. Plaintiffs also allege that GE made "affirmations of fact and promises including those found in its advertisements, promotional and marketing materials, point-of-sale displays, product specifications, and within the washing machine manuals." *Id.* ¶ 115. The Amended Complaint alleges that consumers received an express one-year factory warranty from GE, but does not provide any other information about this warranty. *Id.* ¶ 22. Finally, the Amended Complaint alleges that GE publicized the machines as certified ENERGY STAR products.[2] *Id.* ¶ 25. The Amended Complaint alleges that all of these representations were false because the washing machines were not of a merchantable quality, were not fit for their ordinary purpose, and were not energy efficient. *See id.* ¶ 37.

The named Plaintiffs filed this action on behalf of themselves, a putative nationwide class, and a putative sub-class comprised of "[a]ll persons in Missouri, New Jersey, and Pennsylvania who own a Washing Machine for personal, family, or household purposes." Am. Compl. ¶ 72. The Amended Complaint alleges that the putative class members were damaged because they paid far too much for defective washing machines. *Id.* ¶ 8. The Amended Complaint makes the following specific allegations with respect to the named Plaintiffs.

### A. Plaintiff Fishman

Fishman purchased a GE washing machine for household purposes in November 2006. Am. Compl. ¶ 53. He paid approximately $1,000 for the washing machine and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE. *Id.* Approximately six months after purchasing his washing machine, Fishman noticed a foul, mold, or mildew odor emanating from the machine. *Id.* Fishman contacted GE so that GE could correct the problem. *Id.* ¶ 54. GE recommended that Fishman leave his washing machine door open between washes to reduce the incidence the Mold Problem. *Id.* ¶ 55. This recommendation did not solve the problem. *Id.* In addition, the GE owner's manual specifically warns that leaving the washer door open creates a risk of injury to children and pets who might be enticed to hang on the door or crawl inside the washer. *Id.* GE never resolved the Mold Problems in Fishman's machine, and instead provided Fishman with a check for $75.00. *Id.* ¶ 57.

---

[2] Certified ENERGY STAR products are more energy efficient than regular products. *Id.* ¶ 28. In order to use the ENERGY STAR mark, manufacturers must comply with current ENGERY STAR guidelines. *Id.* ¶ 26.

### B. Plaintiff Bowser

Bowser purchased a washing machine from Builders Surplus for household purposes on or about March 3, 2007. Am. Compl. ¶ 59. She paid approximately $579.99 for the washing machine and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE. *Id.* At some unspecified time after the purchase of her washing machine, Bowser noticed a foul, mold, or mildew odor emanating from the machine. *Id.* Bowser tried to clean her washing machine using bleach, vinegar, and Tide Washing Machine Cleaner. *Id.* ¶ 61. She also manually cleaned the visible Mold Problem from the gasket and the hose at the bottom of the machine. *Id.* She also arranged for a certified technician from Sears to attempt to remedy the Mold Problems, but these measures were unsuccessful. *Id.* Bowser contacted GE. *Id.* ¶ 62. GE recommended that Bowser keep her washing machine door open and provided her with a box of Tide Washing Machine Cleaner. *Id.* None of these measures solved the Mold Problems. *Id.* ¶ 64.

### C. Plaintiff Plunkett

Plunkett purchased a washing machine from Foster's Appliance for household purposes on or about January 23, 2010. Am. Compl. ¶ 65. She paid approximately $2023.74 for the washing machine and matching dryer, and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE. *Id.* At some unspecified time after the purchase of her washing machine, Plunkett noticed a foul, mold, or mildew odor emanating from the washing machine. *Id.* Plunkett left the door open and cleaned the unit on a regular basis, but these measures failed to correct the Mold Problems. *Id.* Plunkett also contacted Foster's Appliance, but never received a response. *Id.* ¶ 66.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it

is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

### III.     DISCUSSION

Plaintiffs' Amended Complaint asserts six causes of action:

(1) Count 1:  Violation of the New Jersey Consumer Fraud Act ("New Jersey CFA");
(2) Count 2:  Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL");
(3) Count 3:  Violation of the Missouri Merchandising Practices Act ("Missouri MPA");
(4) Count 4:  Breach of Express Warranty;
(5) Count 5:  Breach of the Implied Warranty of Merchantability; and
(6) Count 6:  Unjust Enrichment.

Plaintiffs assert that New Jersey law applies to the putative nationwide class. Defendant does not dispute that New Jersey law applies for purposes of this motion.[3] Defendant argues that every count of the Amended Complaint, except Count 4 (Breach of Express Warranty), is subsumed by the New Jersey Product Liability Act ("New Jersey PLA"). Defendant also argues that each of the six counts in the Amended Complaint should be dismissed. Finally, Defendant argues that the nationwide class allegations in the Amended Complaint should be "dismissed." Def.'s Br. at 13. The Court will discuss: (1) the New Jersey PLA; (2) the statutory consumer fraud claims (Counts 1-3); (3) the warranty claims (Counts 4 and 5); (4) the unjust enrichment claim (Count 6); and (5) the nationwide class allegations.

---

[3] Defendant reserved its right to analyze each Plaintiff's claims under New Jersey's choice-of-law principles at a later stage in the litigation. *See* Def.'s Br. at 9-10 n.4.

### A. The New Jersey PLA

Defendant argues that Plaintiffs' statutory consumer fraud, breach of implied warranty, and unjust enrichment claims are subsumed by the New Jersey PLA and should be dismissed. The Court disagrees.

The New Jersey PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). The statute defines a "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The statute defines "harm" caused by a product to include: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; [and] (c) pain and suffering, mental anguish or emotional harm . . . ." N.J.S.A. 2A:58C-1(b)(2).

This is not a product liability action. Defendant argues that the essence of the Amended Complaint is that mold problems in the washing machines caused damage to Plaintiffs' property (clothes and other items washed), and to Plaintiffs themselves or their children and pets. This mischaracterizes the Amended Complaint. Plaintiffs do not claim any physical injury to person (or pet) as part of their damages. Rather, the crux of Plaintiffs' allegations is that the washing machines themselves do not work as promised; *i.e.*, Plaintiffs' allege that the harm was "to the product itself." N.J.S.A. 2A:58C-1(b)(2); *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 457 (D.N.J. 2012) (where plaintiff's claim of harm was for the "accumulation of mold inside the Miele washing machine and the resulting odor," the "damage is to the product itself and therefore falls outside the ambit of the NJPLA") (internal quotations omitted).

Accordingly, the Court finds that none of Plaintiffs' claims are subsumed by the New Jersey PLA.

### B. The Statutory Consumer Fraud Claims (Counts 1-3)

In Count 1, Plaintiffs assert a claim for Violation of the New Jersey CFA, N.J.S.A. 56:8-1, *et seq.* In Count 2, Plaintiffs assert a claim for violation of the Pennsylvania UTPCPL, 73 P.S. § 201-1, *et seq.* In Count 3, Plaintiffs assert a claim for violation of the Missouri MPA, Mo. Rev. Stat. § 407.010, *et seq.* Defendant moves to dismiss all three Counts, arguing that Plaintiffs failed to plead fraud with the particularity required by Rule 9(b). The Court agrees.

Despite filing a 39-page, 152-paragraph Amended Complaint, Plaintiffs failed to provide basic information about key aspects of their claims. For example, Plaintiffs do not specify which washing machines they are talking about. Plaintiffs do not provide model numbers, dates of manufacture or any other information identifying precisely

which products are at issue in this litigation.  Further, Plaintiffs failed to provide essential dates, such as the dates on which Bowser and Plunkett discovered the alleged defect in their washing machines.  Finally, Plaintiffs assert that "GE . . . made express representations about the quality of its washing machines" (Am. Compl. ¶ 24), but do not identify what these representations were or when they were made.  Without this basic information, the allegations in the Amended Complaint are not sufficient "to place the defendant [or the Court] on notice of the precise misconduct . . . charged."  *Frederico*, 507 F.3d at 200.  And they fall woefully short of meeting Rule 9(b)'s heightened pleading standard.

Accordingly, the motion to dismiss Counts 1, 2 and 3 is **GRANTED**, and Counts 1, 2 and 3 are **DISMISSED WITHOUT PREJUDICE**.

### C.  The Warranty Claims (Counts 4 and 5)

In Count 4, Plaintiffs assert a claim for breach of express warranty.  In Count 5, Plaintiffs assert a claim for breach of the implied warranty of merchantability.  Defendant moves to dismiss, arguing that Plaintiffs failed to plead plausible warranty claims.  The Court agrees.

The Amended Complaint does not provide enough information to support an express warranty claim.  Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.  N.J. Stat. Ann. § 12A:2–313; *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011).  In this case, the Amended Complaint fails to describe the most important part of the express warranty claim:  the express warranty.  Plaintiffs allege that "GE has breached its written warranty" (Am. Compl. ¶ 119), but Plaintiffs do not identify the actual language or source of this written warranty, or specify when the warranty was in effect.  Plaintiffs also allege that Defendant made "affirmations of fact and promises including those found in its advertisements, promotional and marketing materials, point-of-sale displays, product specifications, and within the washing machine manuals."  Am. Compl. ¶ 115.  But Plaintiffs do not identify any specific affirmations of fact or promises, and do not provide the language of any advertisements, promotional or marketing materials, point-of-sale displays, or product specifications.  Without the language of the warranty, and a start date and end date for the warranty, Plaintiffs cannot state a breach of express warranty claim.  *See Arlandson*, 792 F. Supp. 2d at 707 (breach of express warranty claim dismissed where plaintiffs "fail[ed] to identify the actual language or source of any alleged warranty"); *Simmons v. Stryker Corp.*, No. 08–3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty").

6

The Amended Complaint also does not provide enough information to support an implied warranty claim. Under New Jersey law, a warranty of merchantability is implied in every contract for the sale of goods. N.J. Stat. Ann. § 12A:2–314. "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08–939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009). "[A]n implied warranty cannot temporally exceed an express warranty under New Jersey law." *Weske v. Samsung Electronics Am., Inc.*, No. 10-4811, 2012 WL 833003, at *6 (D.N.J. Mar. 12, 2012) (citing N.J.S.A. 12A:2–317). Because Plaintiffs failed to specify the start and end date of any express warranty, and failed to identify when the alleged defect arose in Bowser and Plunkett's washing machines, Plaintiffs have not established that the alleged defects arose during the implied warranty period. Thus, Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability.

Accordingly, the motion to dismiss Counts 4 and 5 is **GRANTED**, and Counts 4 and 5 are **DISMISSED WITHOUT PREJUDICE**.

### D. The Unjust Enrichment Claim (Count 6)

In Count 6, Plaintiffs assert a claim for unjust enrichment. Defendant moves to dismiss this claim, arguing that Plaintiffs cannot recover for unjust enrichment because they did not purchase their washing machines directly from GE. The Court agrees.

Under New Jersey law, an indirect purchaser cannot succeed on a claim for unjust enrichment. "When an individual purchases a consumer product from a third-party store and not the manufacturer, the purchaser has not conferred a benefit directly to the manufacturer such that the manufacturer could be found to have been unjustly enriched." *Weske*, 2012 WL 833003, at *7; *see also Hughes v. Panasonic Consumer Electronics, Co.*, No. 10–846, 2011 WL 2976839, at *27 (D.N.J. July 11, 2011) (dismissing unjust enrichment claim on Rule 12(b)(6) motion where plaintiffs in putative class action purchased allegedly defective product from third-party sellers). Plaintiffs cite to a single case, *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192 (D.N.J. 2012) ("*Stewart*"), holding that a plaintiff can bring an unjust enrichment claim against a manufacturer, even if the plaintiff bought the product in question from a third-party seller. *Id.* at 201. However, even the *Stewart* court acknowledged that the vast majority of courts in this District have come out the other way. *See Stewart*, 877 F. Supp. 2d at 197. This Court joins the majority of courts in this District in finding that a manufacturer is not liable for unjust enrichment if plaintiffs purchased the goods in question from a third-party. It is undisputed that Plaintiffs did not purchase their washing machines directly from GE. Thus, they cannot recover from GE for unjust enrichment.

Accordingly, the motion to dismiss Count 6 is **GRANTED**, and Count 6 is **DISMISSED WITH PREJUDICE**.

### E. The Nationwide Class Allegations

In a single paragraph of its motion, Defendant argues that the nationwide class allegations in the Amended Complaint should be "dismissed" "due to the differences in the consumer fraud laws of the various states across the country." Def.'s Br. at 13. The Court disagrees. As an initial matter, the Court notes that the proper procedural mechanism for making this argument is a motion to strike under Federal Rule of Civil Procedure 12(f). However, even if Defendant had properly filed a motion to strike, the Court would deny it, as any request to strike the class allegations is premature at this stage of the proceedings. *See Feldman v. Mercedes-Benz USA, LLC*, No. 11-984, 2012 WL 6596830, at *13 (D.N.J. Dec. 18, 2012) ("numerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature"); *Andrews v. Home Depot U.S.A., Inc.*, No. 03-5200, 2005 WL 1490474, at *3 (D.N.J. June 23, 2005) (same); *Myers v. Medquist, Inc.*, No. 05-4608, 2006 WL 3751210, at *5 (D.N.J. Dec. 20, 2006) (same). Accordingly, the motion to dismiss the nationwide class allegations is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** in part, and **DENIED** in part. Counts 1, 2, 3, 4, and 5 are **DISMISSED WITHOUT PREJUDICE**. Count 6 is **DISMISSED WITH PREJUDICE**. The motion to dismiss the nationwide class allegations is denied. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 30, 2013**