UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STANLEY FISHMAN, SUZANNE BOWSWER, and VICKI PLUNKETT,** *individually and on behalf of all others similarly situated*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**GENERAL ELECTRIC COMPANY,**<br><br>**Defendant.** | Civ. No. 2:12-cv-00585 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Stanley Fishman, Suzanne Bowser,[1] and Vicki Plunkett filed this putative class action against Defendant General Electric Company ("GE"). This matter comes before the Court on (1) Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and (2) Plaintiffs' motion to strike certain declarations from affidavits submitted with Defendant's motion to dismiss. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**, and Plaintiffs' motion to strike is **DENIED**.

### I.   BACKGROUND

GE manufactures, produces, distributes, and sells washing machines throughout the United States. Second Am. Compl. ¶ 40. Sales occur both directly to the consumer and through GE's network of authorized dealers, which includes leading retailers and online merchants. *Id.* ¶ 41. The Second Amended Complaint alleges that GE's "front-loading washer machines" have design defects that cause them to: (1) accumulate mold, mildew, and "biofilm" (which Plaintiff describes as "a filmy substance that develops within the [w]ashing [m]achines"); (2) produce a moldy or mildew odor that permeates the washing machines and the clothes and other items washing in the machines; and (3) fail to "self-clean" by removing the moisture, residue, and bacteria that lead to the formation of mold, mildew, and foul odors (collectively, the "Mold Problems"). *Id.* ¶ 2.

---

[1] Plaintiff Bowser's name is improperly listed in the caption as "Suzanne Bowswer."

1

The Second Amended Complaint alleges that defects in the drum, the door, the door seal, and the amount of water used by the washing machines play a role in the accumulation of mold and mildew.  *Id.* ¶ 57.

Plaintiffs allege although GE was aware that the washing machines were inherently defective, it failed to warn its customers about the design defects or the Mold Problems.  Second Am. Compl. ¶ 59.  Plaintiffs also allege that consumers received an express one-year factory warranty from GE stating that GE would replace any parts that fail due to a defect in materials or workmanship (the "Express Warranty"), and that GE refused to honor that Express Warranty.  *Id.* ¶¶ 15, 20.  Additionally, the Second Amended Complaint alleges that GE made numerous misrepresentations regarding the front-loading washing machines.  *Id.* ¶ 56.  For instance, the Amended Complaint alleges that GE improperly publicized the machines as certified ENERGY STAR products.[2]  *Id.* ¶ 25.  Plaintiffs also allege that GE made "affirmations of fact and promises including those found in its advertisements, promotional and marketing materials, point-of-sale displays, product specifications, and within the washing machine manuals."  *Id.* ¶ 120.  Plaintiffs maintain that all of these representations were false because the washing machines were not of a merchantable quality, were not fit for their ordinary purpose, and were not energy efficient.  *See id.* ¶ 37.

The named Plaintiffs filed this action on behalf of themselves, a putative nationwide class, and a putative sub-class comprised of "[a]ll persons in Missouri, New Jersey, and Pennsylvania who own a Washing Machine for personal, family, or household purposes."  Second Am. Compl. ¶ 76.  The Second Amended Complaint alleges that the putative class members were damaged because they paid far too much for defective washing machines.  *Id.* ¶¶ 8.  The Second Amended Complaint makes the following specific allegations with respect to the named Plaintiffs.

### A.  Plaintiff Fishman

Fishman purchased a GE washing machine (model number WCVH6260FWW) for household purposes in November 2006.  Second Am. Compl. ¶ 14.  Mr. Fishman's washing machine came with an Owner's Manual containing the Express Warranty.  *Id.* ¶ 15.  He paid approximately $1,000 for the washing machine and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE.  *Id.*  ¶ 14.  Approximately six months after purchasing his washing machine, Fishman noticed a foul, mold, or mildew odor emanating from the machine.  *Id.*  Fishman contacted GE so that GE could correct the problem.  *Id.* ¶ 16.  GE told Fishman to run an empty load cycle with bleach to clean the washing machine, and recommended that Fishman leave his washing machine door open between washes to reduce the incidence of the Mold

---

[2] Certified ENERGY STAR products are more energy efficient than regular products.  *Id.* ¶ 47.  In order to use the ENERGY STAR mark, manufacturers must comply with current ENGERY STAR guidelines.  *Id.* ¶ 45.

Problem. *Id.* ¶¶ 17-18. This recommendation did not solve the problem. *Id.* In addition, the GE owner's manual specifically warns that leaving the washer door open creates a risk of injury to children and pets who might be enticed to hang on the door or crawl inside the washer. *Id.* ¶ 18. GE never resolved the Mold Problems in Fishman's machine, and instead provided Fishman with a check for $75.00. *Id.* ¶ 20.

### B. Plaintiff Bowser

Bowser purchased a GE washing machine (model number WSXH208FWW) from Builders Surplus for household purposes on or about March 3, 2007. Second Am. Compl. ¶ 23. Bowser's washing machine came with an Owner's Manual containing the Express Warranty. *Id.* ¶ 24. She paid approximately $579.99 for the washing machine and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE. *Id.* ¶ 23. In 2010, Bowser noticed a foul, mold, or mildew odor emanating from the machine. *Id.* Bowser tried to clean her washing machine using bleach, vinegar, and Tide Washing Machine Cleaner. *Id.* ¶ 26. She also manually cleaned the visible Mold Problem from the gasket and the hose at the bottom of the machine. *Id.* She also arranged for a certified technician from Sears to attempt to remedy the Mold Problems, but these measures were unsuccessful. *Id.* Bowser contacted GE. *Id.* ¶ 27. GE recommended that Bowser keep her washing machine door open and provided her with a box of Tide Washing Machine Cleaner. *Id.* None of these measures solved the Mold Problems. *Id.* ¶ 29.

### C. Plaintiff Plunkett

Plunkett purchased a GE washing machine (model number WCVH6800JMV) from Foster's Appliance for household purposes on or about January 23, 2010. Second Am. Compl. ¶ 31. Plunkett's washing machine came with an Owner's Manual containing the Express Warranty. *Id.* ¶ 32. She paid approximately $2023.74 for the washing machine and matching dryer, and at all times used the washing machine as instructed by GE's manual or as otherwise directed by GE. *Id.* ¶ 31. Less than six months later, Plunkett noticed a foul, mold, or mildew odor emanating from the washing machine. *Id.* Plunkett contacted Foster's Appliance about the Mold Problem, but never received a response. *Id.* ¶ 33. She also contacted GE. *Id.* However, the Second Amended Complaint is not clear as to whether she ever spoke with anyone at GE about the Mold Problem. Plunkett cleaned the unit on a regular basis and ran empty hot water cycles, but these measures failed to correct the Mold Problem. *Id.* ¶¶ 34-35.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under

Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

### III.  DISCUSSION

Plaintiffs' Second Amended Complaint asserts six causes of action:

(1) Count 1: Violation of the New Jersey Consumer Fraud Act ("New Jersey CFA");
(2) Count 2: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL");
(3) Count 3: Violation of the Missouri Merchandising Practices Act ("Missouri MPA");
(4) Count 4: Breach of Express Warranty;
(5) Count 5: Breach of the Implied Warranty of Merchantability; and
(6) Count 6: Unjust Enrichment.

Plaintiffs assert that New Jersey law applies to the putative nationwide class. Defendant does not dispute that New Jersey law applies for purposes of this motion.[3] The Court previously dismissed Count 6 with prejudice, and will do so again here. The Court will discuss Counts 1-5, as well as Plaintiffs' motion to strike, below.

---

[3] Defendant reserved its right to analyze each Plaintiff's claims under New Jersey's choice-of-law principles at a later stage in the litigation. *See* Def.'s Br. at 12 n.7.

### A. The Statutory Consumer Fraud Claims (Counts 1-3)

In Count 1, Plaintiffs assert a claim for Violation of the New Jersey CFA, N.J. Stat. Ann. 56:8-1, *et seq.* In Count 2, Plaintiffs assert a claim for violation of the Pennsylvania UTPCPL, 73 Pa. Stat. Ann. § 201-1, *et seq.* In Count 3, Plaintiffs assert a claim for violation of the Missouri MPA, Mo. Rev. Stat. § 407.010, *et seq.* Defendant moves to dismiss all three Counts, arguing that Plaintiffs failed to plead fraud with the particularity required by Rule 9(b). The Court agrees.

The Second Amended Complaint falls short of meeting Rule 9(b)'s heightened pleading standard. Plaintiffs failed to provide essential dates, such as the dates on which Plaintiffs contacted GE. Accordingly, the Second Amended Complaint does not sufficiently allege facts showing that GE was aware of the alleged defects prior to the sales at issue in this litigation. *See Weske v. Samsung Elecs. Am., Inc.*, 2012 U.S. Dist. LEXIS 32289, at *17-18 (D.N.J. Mar. 12, 2012). Plaintiffs have also failed to identify when certain allegedly false representations were made. For instance, while Plaintiffs allege that the washing machines do not "self-clean" (Second Am. Compl. ¶ 3), they cite to no representation from GE claiming that the washing machines self-clean. Thus, the allegations in the Amended Complaint are not sufficient "to place the defendant [or the Court] on notice of the precise misconduct . . . charged." *Frederico*, 507 F.3d at 200.

Furthermore, the Second Amended Complaint fails to sufficiently allege that Plaintiffs suffered an ascertainable loss. *See* N.J. Stat. Ann. § 56:8-19; 73 Pa. Stat. Ann. § 201-9.2; Mo. Rev. Stat. § 407.025. Plaintiffs have not set forth facts showing "either out-of-pocket loss or a demonstration of loss in value." *Green v. Green Mtn. Coffee Roasters, Inc.*, 279 F.R.D. 275, 281 (D.N.J. 2011) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). To satisfy Rule 9(b)'s heightened standard, Plaintiffs must make a more detailed attempt to "quantify the difference in value between the promised product and the actual product received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011).

Accordingly, the motion to dismiss Counts 1, 2 and 3 is **GRANTED**, and Counts 1, 2 and 3 are **DISMISSED WITHOUT PREJUDICE**.

### B. The Warranty Claims (Counts 4 and 5)

In Count 4, Plaintiffs assert a claim for breach of express warranty. In Count 5, Plaintiffs assert a claim for breach of the implied warranty of merchantability. Defendant moves to dismiss, arguing that Plaintiffs failed to adequately plead warranty claims. The Court agrees.

The Amended Complaint does not provide enough information to support an express warranty claim. Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must allege: (1) that Defendant made an affirmation, promise,

5

or description about the product; (2) that this affirmation, promise, or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise, or description. N.J. Stat. Ann. § 12A:2–313; *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). Regarding the Express Warranty, Plaintiffs have failed to allege that they contacted GE during the one-year warranty period.[4] While the Second Amended Complaint clearly indicates that Plaintiffs contacted GE, it is not clear when Plaintiffs made this contact. *See Spera v. Samsung Elecs. Am., Inc.*, No. 12-05412, 2014 WL 1334256, at *8 (D.N.J. Apr. 2, 2014) (dismissing an express warranty claim because "the Court cannot discern from the Complaints whether Samsung was contacted during the warranty period"). Plaintiffs also allege that Defendant made "affirmations of fact and promises including those found in its advertisements, promotional and marketing materials, point-of-sale displays, product specifications, and within the washing machine manuals." Second Am. Compl. ¶ 120. Specifically, Plaintiffs allege that Defendant warranted that the washing machines would "self-clean." Second Am. Compl. ¶ 132. However, Plaintiffs do not provide language from any advertisements, promotional or marketing materials, point-of-sale displays, or product specifications in which GE stated that the washing machines would self-clean. And with respect to Plaintiffs' allegations that GE touted its washing machines as certified ENERGY STAR products, the Second Amended Complaint fails to allege that the washing machines did not qualify for the ENERGY STAR label.

The Second Amended Complaint also does not state an implied warranty claim, because it fails to allege that Plaintiffs contacted GE within a one-year period from purchase. The Owner's Manuals containing the Express Warranty referenced in the Second Amended Complaint each include the following disclaimer:

> ***EXCLUSION OF IMPLIED WARRANTIES – Your sole and exclusive remedy is product repair as provided in this Limited Warranty. Any implied warranties, including the implied warranties of merchantability or fitness for a particular purpose, are limited to one year or the shortest period allowed by law.***

Declaration of Angela Corbett ("Corbett Declaration"), ECF No. 39-3, Exs. A, B, C.[5] New Jersey courts generally recognize disclaimers, and will enforce them if they are clear

---

[4] Defendant argues that the breach of express warranty claim fails because Express Warranty only covers "defects in materials and workmanship" and therefore does not cover what Plaintiffs characterize in the Second Amended Complaint as "design defects." The Court agrees with Plaintiffs that "at the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics...the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co.*, No. 08–4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010). This argument thus does not provide adequate grounds for dismissal.

[5] Because Plaintiffs have relied on portions of the Owner's Manuals in the Second Amended Complaint, and because the warranty is integral to their claims, the Court may consider the Owner's Manuals on a motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

and conspicuous.  *See* N.J. Stat. Ann. 12A:2–316; *Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 416 A.2d 394, 399 (N.J. 1980).

Here, each disclaimer is in bold, italicized, and set off from the surrounding text. Accordingly, the Court finds that the disclaimers, which limit any implied warranties to a one-year period, are clear and conspicuous and, therefore, enforceable.  *See Berman v. ADT LLC*, No. 12-7705, 2013 WL 6916891 (D.N.J. Dec. 13, 2013) (finding a disclaimer that specifically mentions "merchantability" and is easily discernible from its surrounding text to be enforceable); *Atl. Health Sys., Inc. v. Cummins Inc.*, No. 08-3194, 2010 WL 5252018, at *6 (D.N.J. Dec. 17, 2010) (finding a disclaimer located on the last page of warranty information to be conspicuous and thus enforceable).  Accordingly, because Plaintiffs have not alleged that they contacted GE within one year from purchasing their respective washing machines, Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability.

Accordingly, the motion to dismiss Counts 4 and 5 is **GRANTED**, and Counts 4 and 5 are **DISMISSED WITHOUT PREJUDICE**.

### C.  Motion to Strike

Plaintiffs also move to strike portions of the Corbett Declaration and the Declaration of Diane L. Santillo (the "Santillo Declaration"), which were submitted in support of Defendant's motion to dismiss.  Specifically, Plaintiffs move to strike paragraphs 5, 8, and 11 of the Corbett Declaration and paragraphs 3 and 4 of the Santillo Declaration, arguing that those paragraphs contain facts that are not appropriately considered on a motion to dismiss under Rule 12(b)(6).  Because the Court need not, and did not, consider any of the contested paragraphs from the Corbett Declaration or the Santillo Declaration in deciding the motion to dismiss, Plaintiff's motion to strike is **DENIED** as moot.  *See Children's Hosp. of Philadelphia v. Independence Blue Cross*, 89 F. Supp. 2d 630, 632 n. 2 (E.D. Pa. 2000).

### IV.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**. Counts 1, 2, 3, 4, and 5 are **DISMISSED WITHOUT PREJUDICE**.  Count 6 is again **DISMISSED WITH PREJUDICE**.  The Court shall grant Plaintiffs thirty days to file a Third Amended Complaint consistent with this Opinion.  Plaintiffs' motion to strike is **DENIED**.  An appropriate order follows.

    /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 23, 2014**